<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARILYN JACCARD, | |
| Plaintiff, | Civ. No. 14-7535 |
| v. | OPINION |
| BANK OF AMERICA, et al., | |
| Defendants. | |

<u>THOMPSON, U.S.D.J.</u>

<u>INTRODUCTION</u>

This matter has come before the Court on four motions to dismiss: the Motion to Dismiss

pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) of Defendants McGovern

Legal Services, LLC, Francis J. McGovern, Esq., and Michael Polulak, Esq. (collectively, the

"McGovern Defendants") (Doc. No. 14); the Motion to Dismiss pursuant to Rule 12(b)(6) of

Defendant Bank of America, N.A. ("BANA") (Doc. No. 16); the Motion to Dismiss pursuant to

Rule 12(c) of Defendants Sea Bright Borough Police Department, Brett Friedman, and Marc

Leckstein (collectively, the "Sea Bright Defendants)" (Doc. No. 17); and the Motion to Dismiss

pursuant to Rule 12(c) of Defendants Marc Leckstein and the Sea Bright Condominium

Association, Inc. (the "Condo Association") (Doc. No. 18).  Defendants attack Plaintiff's federal

claims for violations of 42 U.S.C. § 1983, the Fair Debt Collection Practices Act, and the

Racketeer Influenced and Corrupt Organizations Act.  Plaintiff opposes each of Defendants'

motions.  (Doc. Nos. 29, 30, 32, and 36).  The parties presented oral argument before the Court

on June 23, 2015.  Upon consideration of the parties' written submissions and oral argument, the

Court will grant Defendants' motions as to the federal claims and dismiss the pending state law claims for lack of jurisdiction.

## BACKGROUND

These are the basic facts Plaintiff has alleged: Plaintiff bought a condo (the "Condo") in the Fountains at Sea Bright development (the "Fountains") in 1999. This purchase was financed through a mortgage, which was ultimately refinanced by Countrywide Home Loans ("Countrywide"). Countrywide was acquired by Defendant Bank of America, NA in January 2008. At all relevant times, a person named Jennifer Hill ("Hill"), not Plaintiff, resided at the Condo. Plaintiff does not state whether Hill was her tenant, but Plaintiff does not claim that Hill's residence at the Condo was illegal or otherwise wrongful.

In 2006, the Condo Association assessed an approximately $5,000 fee to all condo owners for repairs to the Fountains' bulkhead. Plaintiff refused to pay this fee. Then, in 2007, there was a major fire at the Fountains which rendered many of the condos unlivable, but the Condo Association continued to assess maintenance fees, which Plaintiff alleges was improper. Plaintiff refused to pay these fees. In August 2007, Plaintiff entered into a temporary hardship modification with Countrywide, which reduced her mortgage payments to $1,000 for three months.

In June 2008, the Condo Association filed an action to foreclose on the lien it held against Plaintiff for the unpaid maintenance fees and bulkhead assessment in New Jersey Superior Court. Defendant McGovern Legal Services represented the Condo Association in the lien foreclosure action. In August 2008, Countrywide filed a mortgage foreclosure action against Plaintiff in Superior Court. The mortgage foreclosure filings claim that Plaintiff defaulted on the mortgage in April 2008. However, Plaintiff states that she was current on her mortgage

payments, and that Countrywide had been accepting her payments but not giving her credit for the payments.

In June 2009, the Condo Association filed an application for default on its foreclosure action.  A few months later, a Writ of Execution for the lien judgment was executed, which resulted in a sheriff's sale of Plaintiff's condo.  The Condo Association was the winning bidder at the sheriff's sale.  However, no court issued a Writ of Possession requiring Plaintiff to dispossess the Condo after the sheriff's sale.

The properties at the Fountains were damaged by Hurricane Sandy in October 2012.  At some point thereafter, Plaintiff reached out to BANA, which at that time had become Plaintiff's mortgagee following its acquisition of Countywide.  Then, in December 2012, BANA contacted Plaintiff and instructed her to meet its insurance adjuster at the Condo.  When Plaintiff went to the Fountains, Defendant Marc Leckstein, President of the Condo Association, saw Plaintiff and began shouting at her and threatened to have her arrested on the basis that she had no right to be present there.

Plaintiff alleges that Leckstein then abused his position as a member of the Sea Bright City Council by having the Sea Bright Police Department issue five criminal summonses and complaints against Plaintiff for criminal trespass, assault against an officer, and harassment. Plaintiff alleges that these complaints were issued without probable cause.  The complaints were apparently transferred to the Shrewsbury Borough Court; Plaintiff alleges that this is because Leckstein, a member of the Sea Bright City Council, presented a conflict of interest.

Plaintiff claims that the criminal complaints and summonses against her were not properly served on her and that they were fraudulently postmarked so that she would not receive them until after the summons date of December 19, 2012.  In March 2013 the criminal charges

against Plaintiff were dismissed pursuant to a Consent Order that required Plaintiff to refrain from entering the Fountains properties.

BANA reinstated the mortgage foreclosure proceedings against Plaintiff in April 2014.

LEGAL STANDARD

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Under Rule 12(c) of the Federal Rules of Civil Procedure, a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c); *Sikirica v. Nationwide Ins. Co.*,

4

416 F.3d 214, 220 (3d Cir. 2005).  The standard governing a Rule 12(c) motion is the same

standard governing motions to dismiss under Rule 12(b)(6).  *Allah v. Hayman*, 442 Fed. App'x

632, 635 (3d Cir. Aug. 25, 2011); *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

<u>ANALYSIS</u>

**I.      SECTION 1983 CLAIMS**

Claims One, Four, Five, and Nine of Plaintiff's complaint invoke 42 U.S.C. § 1983.  In

order to state a claim under § 1983, a plaintiff must allege that a person acting under color of

state law deprived her of a right secured by the Constitution or the law of the United States.

*Opoki v. Educ. Comm'n for Foreign Med. Graduates*, 574 Fed. App'x 197, 201 (3d Cir. 2014)

(citing *West v. Atkins*, 487 U.S. 42 (1988)).  Each of Plaintiff's claims focuses on a different

theory of liability—conspiracy,[1] violations of due process and equal protection rights,[2]

retaliation, and malicious prosecution, respectively—but the central thrust of each of these

claims is the same: namely, that the foreclosure of the Condo was incomplete because there was

no writ of possession issued by a court dispossessing Plaintiff of the Condo, and thus both the

taking of the Condo and the criminal prosecution of Plaintiff for visiting the Condo in December

2012 were violations of Plaintiff's constitutional rights.  Even assuming that all the Defendants

---

[1] Though the Court's analysis will focus on the issue of qualified immunity, the Court also notes that Plaintiff's naked allegation that "Defendants reached a meeting of the minds amongst themselves that incidents of abuse of process would be tolerated and acted on in conspiracy with all Defendants notwithstanding the constitutional implications of such abuse and the likelihood such conduct would be repeated" (Doc. No. 1, Compl., at ¶ 117), is insufficient to establish that there could have been a necessarily-complex conspiracy among the diverse group of Defendants over a period of several years to deprive Plaintiff of her constitutional rights.  *See Schneller v. Phila. Newspapers, Inc.*, 577 Fed. App'x 139, 143 (3d Cir. 2014) ("Stating that the defendants 'conspired' and 'acted in concert' is no equivalent to pleading a conspiracy with sufficient factual matter to state a plausible claim upon which relief can be granted."); *Opoki,* 574 Fed. App'x at 202.

[2] The Court notes that Plaintiff's allegations concerning her equal protection claim include the statement "The acts and/or omission of Defendants in this case were performed under color of law and deprived Plaintiff of her Fifth . . . and Fourteenth Amendment . . . rights under the United States Constitution to due process, compulsory process, equal protection, and freedom from interference with *his fundamental rights as a parent* without due process of law."  (Doc. No. 1, Compl., at ¶ 168) (emphasis added).  The Plaintiff's use of the wrong possessive pronoun, as well as the reference to a violation of parental rights when there are no allegations that Plaintiff has any children or that any of the Defendants have somehow violated her parental rights, leads the Court to believe that this claim was copied-and-pasted from the complaint in another case altogether.

can be construed as state actors liable under 42 U.S.C. § 1983, Plaintiff's substantive § 1983

claims would still fail because the Defendants are entitled to qualified immunity.

Under the familiar qualified immunity analysis, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).  Courts

may use their discretion in deciding which prong of the qualified immunity test—whether a

constitutional right was violated or whether the law was clearly established beforehand—to

analyze first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Even private actors who can be

considered state actors through the joint action theory are entitled to qualified immunity.  *Burke*

*v. Town of Walpole*, 405 F.3d 66, 88 (1st Cir. 2005).  Thus, if a reasonable person would have

thought that the taking of the Condo was proper and that Plaintiff did not have any right to be

present at the Condo in December 2012, then the Defendants are entitled to qualified immunity

even if Defendant is correct that her rights were violated.

A property owner may lease out her property to a tenant, in which case the property

owner retains ownership of the property but the tenant holds possessory rights to the premises;

such an arrangement creates a landlord-tenant relationship.  *See* Restatment (Second) of

Property, Land. & Ten. § 1.2 (1977).  By virtue of having a lease, a tenant can exclude all others

from possession of the property, even the owner.  *Town of Kearny v. Mun. Sanitary Landfill*

*Auth.*, 363 A.2d 390, 394 (N.J. Super. Ct. Law Div. 1976) ("A lease vests exclusive possession

in the tenant for the term even as against the owner in fee.").

Under New Jersey's foreclosure laws, when a lienholder forecloses on a lien, "a final

judgment of foreclosure declares a sum certain immediately due and commits the proceeds of the

sale of specific property to its satisfaction.  [The property owner] retains legal title to the

6

property until the completion of the process of sheriff's sale, expiration of the redemption period

and transfer of the deed to the successful bidder." *Matter of Mullarkey*, 81 B.R. 280, 283

(Bankr. D.N.J. 1987) (internal citations omitted).  If the property owner holds a possessory

interest in the property before the foreclosure, as was the case in the two cases cited by Plaintiff,

*In re St. Clair*, 251 B.R. 660 (D.N.J. 2000) and *Matter of Mullarkey*, 81 B.R. 280 (Bankr. D.N.J.

1987), the foreclosed-upon owner retains that interest until the foreclosing party obtains a writ of

possession following the transfer of the deed through the sheriff's sale.  *In re St. Clair*, 251 B.R.

at 665–65; *Mullarkey*, 81 B.R. at 283.  In fact, the foreclosed-upon owner becomes a tenant at

sufferance with the deed purchaser as landlord in this circumstance.  *In re St. Clair*, 251 B.R. at

665.  Additionally, the deed purchaser is under no obligation to seek possession of the property.

*City Fed. Sav. & Loan Ass'n v. Jacobs*, 457 A.2d 1211, 1213 (N.J. Super. Ct. App. Div. 1983)

(explaining that the foreclosing mortgagee "is not required to assert his right to possession," and

that not doing so may be a prudent course of action because ownership may be an economic

liability).

　　　However, if the owner has leased the property to a tenant before the foreclosure, the

tenant retains her possessory rights through the foreclosure process until the deed purchaser

obtains a writ of possession or other order from a court awarding possession to the deed

purchaser.  *See* 30 New Jersey Practice § 21.1 (noting that New Jersey's Anti-Eviction Act,

N.J.S.A. 2A18–61.1 et. seq. "applies to mortgagees foreclosing on residential premises.  This

means that in most cases a lender can only evict a protected residential tenant after the sheriff's

sale when 'good cause' or other grounds exist under the Anti-Eviction Act.  Generally, the

foreclosing mortgagee must then commence a separate summary dispossess action in tenancy

court."); *see also Chase Manhattan Bank v. Josephson*, 638 A.2d 1301, 1314 (N.J. 1994)

(overruling earlier precedent and holding that the Anti-Eviction Act "protects tenants from

eviction by foreclosing mortgagees irrespective of whether their tenancy was established before or after the execution of the mortgage.").

To simplify matters, we can say, then, that the two basic forms of property interests—ownership and possession—are legally transferred in a foreclosure proceeding through two separate instruments: ownership is transferred through the deed following the sheriff's sale and possession is transferred through a writ of possession (or similar order) from a court. The fact that a writ of possession only speaks to *possessory interest* is reflected in the form writ of possession contained in the New Jersey Rules of Court, which is reproduced here:

> WHEREAS, on _____, 20__, by a certain judgment of the Superior Court of New Jersey, Law Division, Special Civil Part, _____ County, in a cause therein pending, wherein _____ is (are) the Plaintiff(s) and _____ is (are) the Defendant(s), it was ordered and adjudged that the Plaintiff(s) recover the *possession of the lands and premises*, with appurtenances, described in the Complaint from the Defendant(s) which premises are located at: _____(street address) _____ (City, State, Zip Code) *the possession of which* the Defendant(s) have unlawfully deprived the Plaintiff(s), as appears to us of record.

Writ of Possession, N.J. Rules of Court, Appendix XI-Y (emphasis added).

Thus, in the situation where a property owner leased her property to a tenant, and then the owner's creditors brought a foreclosure action against the owner and took ownership of the property through the purchase of the deed at the sheriff's sale, a reasonable person would think that the tenant continued to hold an exclusive possessory interest in the property and that the foreclosed-upon owner had no legal interest whatsoever in the property. There would be no reason for the deed purchasers to believe that a writ of possession was needed to dispossess the foreclosed-upon owner because there would be no reason to believe that the foreclosed-upon owner had any possessory rights before the foreclosure.

In this case, Plaintiff has alleged that at all relevant times, Jennifer Hill was the resident of the Condo and that, at least until the sheriff's sale, Plaintiff was the owner of the Condo. (Doc.

1, Compl., at ¶¶ 25, 28).  In the Emergent Application for Stay of Sheriff's Sale that Plaintiff

filed October 26, 2009 seeking to stay the sheriff's sale of the Condo in New Jersey Superior

Court, Chancery Division, Plaintiff made references to the fact that Hill was paying rent.  (Doc.

No. 14-2, Decl. of Sayles, at 61–62).[3]  Plaintiff has not alleged that Hill was Plaintiff's tenant.

Plaintiff has alleged that she, Plaintiff Jaccard, was in possession of the Condo in December

2012, and that her possessory rights were "well established and known to all concerned."  (Doc.

No. 1, Compl., at ¶¶ 86–87).  However, whether Plaintiff had a right to possess the Condo is a

legal question, and these allegations are the kind of conclusory statements that need not be

accepted as true in the motion to dismiss analysis.  *See Iqbal*, 556 US at 681.  If Plaintiff and Hill

had a standard landlord-tenant relationship, then Plaintiff would have had no possessory interests

in the Condo at the time of foreclosure.  *Town of Kearny*, 363 A.2d at 394.  For Plaintiff to have

retained a possessory interest in the Condo despite the fact that Hill was the resident, Plaintiff

and Hill would have needed to have a joint tenancy or a tenancy in common. 48A C.J.S. *Joint

Tenancy* § 1 ("Although a joint tenancy and a tenancy in common are separate and distinct

estates, they are alike to the extent that in both cases, the cotenants hold by unity of possession.")

 Whether Plaintiff in fact held a possessory interest in the Condo or not, the Court finds

that a reasonable person would have thought that Plaintiff had no possessory rights to the Condo

either before or after the foreclosure, given that Hill was the resident of the Condo at all relevant

times.  A reasonable person would have believed that Hill was Plaintiff's tenant, and that when

the deed to the Condo was transferred to the Condo Association all of Plaintiff's property rights

to the Condo—both ownership and possession—were extinguished.  Thus, there was no reason

---

[3] Though this fact is not alleged in the Complaint, the Court may consider an "undisputedly authentic document" in a motion to dismiss. *Saponaro v. Grindr, LLC*, 2015 WL 1137870, at *1 n.1 (D.N.J March 13, 2015) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

for any of the Defendants to have believed that a writ of possession was needed to complete the

foreclosure against Plaintiff.

Accordingly, even if Plaintiff is correct that she did maintain a possessory interest in the

Condo after the foreclosure, there is no way for a reasonable person to have known that fact.  A

reasonable person would have thought that the taking of the Condo from Plaintiff was proper and

that Plaintiff did not have any right to be present at the Condo in December 2012.  Thus,

Defendants are entitled to qualified immunity on all of Plaintiff's § 1983 claims, as the property

rights that underlie those claims were not well-established at the time regardless of whether they

were even legally valid at all.

## II.      OTHER FEDERAL CLAIMS

A.  Claim Two, Violation of the Fair Debt Collection Practices Act

Plaintiff claims that BANA violated the Fair Debt Collection Practices Act ("FDCPA")

through its efforts to foreclose on her mortgage using false statements in violation of 15 U.S.C. §

1692a(5).  BANA moves to dismiss on the grounds that it is not a debt collector under the

FDCPA, and thus cannot be liable under that statutory scheme.  In *Oppong v. First Union Mortg.*

*Corp.*, mortgagee Wells Fargo argued that it was not a debt collector under the FDCPA but a

creditor.  The Third Circuit explained that "a business may be a 'debt collector' because its

'principal purposes' is the collection of debts or because it 'regularly' engages in the collection

of debts.  This definition of 'debt collector' excludes creditors who attempt to collect their own

debts, does not exclude an entity in Wells Fargo's position who has acquired a debt that was

already in default." *Oppong v. First Union Mortg. Corp.*, 215 Fed. App'x 114, 118 (3d Cir.

2007).  Plaintiff has alleged that she refinanced her mortgage with Countrywide, and Plaintiff

also acknowledges that BANA is the successor to Countrywide.  (Doc. No. 1, Compl., at ¶¶ 10,

29).  Plaintiff has not alleged that BANA acquired Plaintiff's debt for the purposes of collecting

it.  In fact, Plaintiff has alleged that BANA acquired Countrywide over half a year before a

foreclosure action was brought against her.  (Doc. No. 1, Compl., at ¶ 49–50).  Thus, for these

purposes BANA was a creditor, not a debt collector; it sought to collect its own debt, albeit debt

that was issued by a predecessor.  *See Kloss v. RBS Citizens, N.A.*, 996 F.Supp.2d 574, 588 (E.D.

Mich. 2014) ("Here, Defendant, through a merger involving CCO Mortgage Corp., obtained the

debt before Plaintiffs were in default.  Thus, Defendant is not a debt collector under the FDCPA,

and Plaintiffs have failed to state a claim upon which the Court could grant relief.").  Plaintiff's

FDCPA claim will be dismissed.

> B.  Claim Three, Violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act

In her third claim, Plaintiff alleges that all the Defendants were associated through a

scheme to defraud Plaintiff by making false statements and filing fraudulent civil and criminal

actions against Plaintiff, and that such conduct constitutes a RICO violation.  Plaintiff's RICO

claim in this case is very similar to the RICO claim made by the plaintiffs in the case *Ottilio v.

Valley Nat'l Bancorp*, Civ. No. 13-7154, before this same Court.  The Court notes that the

plaintiffs in *Ottilio* were represented by the same attorney representing Plaintiff Jaccard in the

present case.  In *Ottilio*, this Court dismissed the RICO claim, and the Third Circuit affirmed that

ruling.  *See Ottilio v. Valley Nat'l Bancorp*, 591 Fed. App'x 167, 168–69 (3d Cir. 2015).

The Court dismissed the RICO claim in *Ottilio* on two grounds.  The first ground was

that the *Ottilio* plaintiffs had not properly pled at least two predicate acts of racketeering.  *Ottilio

v. Valley Nat'l Bancorp*, 2014 WL 906138, at \*2 (D.N.J. March 7, 2014).  The *Ottilio* plaintiffs

based their RICO claim on predicates of mail and wire fraud, just as Plaintiff here has done.

First the Court noted that, to comply with Federal Rule of Civil Procedure 9(b)'s particularity

standard, a mail or wire fraud claim "must 'identify the purpose of the mailing within the

defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker

and content of the alleged misrepresentations" and must specify which defendant among a group

of defendants made the fraudulent statement. *Id.* (citing *Dist. 1199P Health & Welfare Plan v.*

*Janssen, L.P.*, N. 06-3044(FLW), 2008 WL 5413105, * 11 (D.N.J. Dec. 23, 2008); *Lum v. Bank*

*of America*, 361 F.3d 217, 224 (3d Cir. 2004) (*abrogated in part on other grounds by Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 557 (2007))).  Then, the Court found that the *Otillio* plaintiffs

had failed to meet the particularity standard for the mail and wire fraud predicates as they had

only alleged that "the Defendants used the U.S. mails and wirings sent or delivered through

private or commercial interstate carriers in furtherance of their enterprise," and that they made

fraudulent misrepresentations. *Ottilio*, 2014 WL 906138, at *2.  Here, Plaintiff Jaccard has only

alleged that "Defendants communicated with Plaintiff, with each other, and with New Jersey

Superior Court, various municipal courts, and the Monmouth County Sheriff's Department via

mail, telephone, wire, and electronic mail on many occasions within a ten year period

immediately preceding the date of this Complaint" to enact a fraud on Plaintiff.  (Doc. No. 1,

Compl. at ¶ 139).  Just as in *Ottilio*, Plaintiff Jaccard has failed to identify specific fraudulent

statements and which of the Defendants made them.  Accordingly, Plaintiff has insufficiently

pled the predicates of a RICO claim.

The other basis for the Court's dismissal of the RICO claim in *Ottilio* was that the

plaintiffs only alleged a single fraudulent scheme, and they were not able "to identify other

individuals or entities that were deprived of property by the alleged criminal enterprise," even

when specifically questioned on that point by the Court at oral argument.  *Ottilio v. Valley Nat'l*

*Bancorp*, 2014 WL 906138, at *3 (D.N.J. March 7, 2014).  This failure to identify other alleged

victims was fatal to the plaintiffs' RICO claims because, as the Court explained in its opinion, a

plaintiff must allege a pattern of racketeering activity that involves "'at least two acts of

racketeering,'" ( "'that the racketeering acts are related, and that they amount to or pose a threat of continued criminal activity,'" and that "allegations of a single fraudulent scheme designed to deprive a single victim of his property on a single occasion do not adequately allege a RICO violation." *Id*. (citing 18. U.S.C. § 1961(5); *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991); and *Zahl, M.D. v. New Jersey Dep't of Law & Pub. Safety*, No. 06-3749(JLL), 2009 WL 806540, \*7 (D.N.J. Mar. 27, 2009) (*aff'd sub nom. Zahl. v. New Jersey Dep't of Law & Pub. Safety Div. of Consumer Affairs*, 428 F. App'x 205 (3d Cir. 2011))).  In the present case, too, Plaintiff failed to identify another victim of this alleged RICO scheme in her Complaint, her Opposition papers, or when her attorney was questioned by the Court at oral argument.  For these reasons, Plaintiff's RICO claim here will be dismissed as well.

## II.    STATE LAW CLAIMS

All of Plaintiff's federal claims are dismissed.  Pursuant to 28 U.S.C. § 1367(c)(3) and Third Circuit precedent, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims.  *Kalick v. Northwest Airlines Corp.*, 372 Fed. App'x 317, 322 (3d Cir. 2010).

## CONCLUSION

For the foregoing reasons, Defendants' motions will be granted.  An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

13